# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TIMOTHY W. COOK,

      Plaintiff,

v.

SGT. MOORE, C.O. VAN NATTA, CAPT. TERVONEN, WARDEN LARRY FUCHS, RYAN BLOUNT, and LT. FOSSHAGE,

      Defendants.

Case No. 24-CV-293-JPS

**ORDER**

  Plaintiff Timothy W. Cook, an inmate confined at Oshkosh Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his constitutional and federal rights, along with a motion to proceed without prepayment of the filing fee. ECF Nos. 1, 2. Plaintiff paid the filing fee in full on March 15, 2024. As such, the Court will deny the motion to proceed without prepayment of the filing fee as moot and the remainder of this Order screens Plaintiff's complaint.

### 1. FEDERAL SCREENING STANDARD

  Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

  In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of

Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

2.  **PLAINTIFF'S ALLEGATIONS**

Plaintiff is a paraplegic male who is paralyzed from the chest down and is confined to a wheelchair. ECF No. 1 at 2. On August 25, 2023, Plaintiff was scheduled for an off-site appointment, and he was to be transported to the Wound Clinic at the U.W. Hospital in Madison. *Id.* Defendants Officer Van Natta ("Van Natta") and Sergeant Moore ("Moore") transferred Plaintiff. Van Natta and Moore knew the protocols and procedures requiring that inmates in the handicap van needed proper seatbelt restraints. *Id.* Prior to being placed in the van, Plaintiff's feet and hands

were placed in mechanical restraints and then he was rolled into the van. *Id.* Van Natta and Moore secured the wheelchair to the van wheelchair fixtures. *Id.* Defendant Lieutenant Fosshage ("Fosshage"), per protocol, was supposed to identify Plaintiff prior to leaving the institution, but Fosshage failed to do so. If Fosshage had followed protocol, he would have noticed that Plaintiff was not wearing a seatbelt prior to leaving the institution.

When driving through Madison, Van Natta was traveling at about thirty-five to forty miles per hour when he approached a set of railroad tracks, at which point he slammed on the breaks. *Id.* Because Plaintiff was not secured in the wheelchair with a seatbelt, Plaintiff's body was violently ejected forward into the steel divider of the van. *Id.* at 2–3. Plaintiff had no way to soften the fall because he was restrained in handcuffs. *Id.* When he fell, Plaintiff hit the steel barrier with the top of his head; his head was bleeding and he also hurt his neck and shoulder. *Id.* at 3. The officers stopped the vehicle and found Plaintiff laying helplessly on the floor. *Id.* Instead of calling an ambulance, the officers picked him up, placing him in further risk of danger, and took him to the emergency room. *Id.* A doctor diagnosed Plaintiff with whiplash, a neck injury, a head injury, and a shoulder injury. *Id.* Plaintiff was then transported back to the institution where Defendant Capt. Tervonen ("Tervonen") documented his injuries. *Id.* Tervonen did not do anything to the officers who transported Plaintiff. *Id.*

The next day, Sgt. Xiong ("Xiong") talked to Plaintiff. *Id.* Plaintiff told Xiong that he could not get out of bed to retrieve his meal or medication in the dayroom; Plaintiff was not seen that day for his pain. *Id.* In the incident report, Van Natta admitted that he and Moore did not secure Plaintiff in a seatbelt. *Id.* Defendants Warden Larry Fuchs ("Fuchs") and Security Director Ryan Blount ("Blount") oversaw this incident but did not reply back to Plaintiff. *Id.*

3.  **ANALYSIS**

The Court finds that Plaintiff may proceed against Van Natta and Moore for an Eighth Amendment deliberate indifference claim. The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To prevail on an Eighth Amendment claim, plaintiff must establish that defendants were deliberately indifferent towards an excessive risk to inmate health or safety. *Id*. (citing *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015)). Plaintiff must establish that: (1) the harm to which he was exposed was objectively serious; and (2) prison officials subjectively had actual, and not merely constructive, knowledge of the risk and nevertheless disregarded the risk. *Id*. To satisfy the second element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

"In general, failure to secure a seatbelt, although unwise, is not a substantial risk of harm that rises to the level of a constitutional violation." *Williams v. Wis. Lock & Load Prisoner Transports*, LLC, No. 15 C 8090, 2016 WL 4124292, at *3 (N.D. Ill. Aug. 3, 2016). The Seventh Circuit has noted that "[n]either the Supreme Court nor [the Seventh Circuit] has ruled that transporting an inmate without a seatbelt creates an intolerable risk of harm." *Dale v. Agresta*, 771 F. App'x 659, 661 (7th Cir. 2019). It further notes that other circuits have concluded that, "[w]ithout reckless driving or other exacerbating circumstances, failing to seat-belt a shackled inmate does not pose a substantial risk of serious harm." *Id; see also Jeffery v. Fuentez*, No. 19-CV-1212-PP, 2020 WL 6149707, at *4 (E.D. Wis. Oct. 20, 2020).

Here, Plaintiff's alleges that Van Natta drove the transport van recklessly by slamming on the breaks, causing him to be thrown from his

wheelchair, and that there were any exacerbating circumstances because Plaintiff is a paraplegic and was restrained in handcuffs prior to entering the van. At the pleading stage, the Court will allow Plaintiff to proceed against Van Natta and Moore for an Eighth Amendment deliberate indifference claim.

The Court will not, however, allow Plaintiff to proceed against any other defendants. Plaintiff alleges that Fosshage would have noticed he was not wearing his seatbelt if he had followed protocol to identify Plaintiff. This failure, however, was at most negligence and does not show that Fosshage had any awareness that Plaintiff was not properly secured. As to Defendants Tervonen, Fuchs, and Blount, Plaintiff has not alleged that these defendants were personally involved in the constitutional deprivation. For a prison official to be personally liable, he or she must have participated in some way with the alleged constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.") (internal quotation marks and citation omitted); *see also Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). Finally, as to any lack of medical treatment, Plaintiff has not pled sufficient facts for the Court to decipher a constitutional violation. Plaintiff may be attempting to bring a claim for denying him adequate medical care following his injury, however, the Court does not find that Plaintiff pleads sufficient factual content that allows the Court to draw the reasonable inference that any named defendants are liable for the misconduct alleged. *See Ashcroft*, 556 U.S. at 678. If Plaintiff wishes to pursue this claim, he must amend his complaint and provide more detail regarding his denial of medical care.

Finally, the Court finds that Plaintiff may not proceed on Americans with Disabilities Act ("ADA") or Rehabilitation Act ("RA") claims. Title II of the ADA "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of that disability" and applies to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 206 (1998) (quoting 42 U.S.C. § 12132). To establish an ADA claim, "the plaintiff must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability.'" *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132). Analysis under the RA, 29 U.S.C. § 794, is essentially the same except that the RA includes an additional element requiring that the entity denying access receive federal funds. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (ADA and RA standards are "functionally identical").

"[B]ecause the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of these organizations," a plaintiff may not sue defendants in their individual capacities – the proper defendant is the organization, or the individual in his or her official capacity. *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds). Like the ADA, the RA has been interpreted to preclude suits against officials in their individual capacities. *See Boston v. Dart*, 2015 WL 4638044, at *2 (N.D. Ill. Aug. 4, 2015) (citing *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 624, 644 (7th Cir. 2015)).

The term "qualified individual with a disability" means,

an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. §12131. The term "disability" means "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include, but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The ADA is not violated when prison officials fail to "attend to the medical needs of … disabled prisoners." *Resel v. Fox*, 26 F. App'x 572, 576–77 (7th Cir. 2001) (quoting *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996)). A claim for inadequate medical treatment is improper under the ADA. *Id.*

Here, the Court accepts that Plaintiff's paraplegic status qualifies him as an individual with a disability. Plaintiff has, however, failed to allege any program or activity to which he was denied access because of his disability. As such, the Court finds that Plaintiff may not proceed on an ADA or RA claim.

4.  **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment claim against Van Natta and Moore for their deliberate indifference to Plaintiff's safety.

Page 7 of 10
Case 2:24-cv-00293-JPS   Filed 04/05/24   Page 7 of 10   Document 5

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to proceed without prepayment of the filing fee, ECF No. 2, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants Tervonen, Fuchs, Blount, and Fosshage be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants **Van Natta and Moore**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 5th day of April, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.